*465 OPINION OF THE COURT
James D. Pacones, J.
Imre B.R. has presented an order to show cause supported by a verified petition with four exhibits for the purpose of commencing a special proceeding under Mental Hygiene Law article 81. Imre requests a judgment of this court appointing him as the alleged incapacitated person’s (AIP) limited guardian pursuant to Mental Hygiene Law § 81.16 (b) and (c) (2). The petition alleges that the AIP is incapacitated as that term is discussed in Mental Hygiene Law § 81.02 (b). The basis for this application is grounded in the refusal of a financial institution, Merrill Lynch, to recognize the power of attorney executed by the AIP on December 18, 2010 under which Imre is currently acting as the AIP’s agent. Imre indicates that all other entities in which the AIP has a financial interest have accepted the power of attorney. The court declines to sign the order to show cause for the following reasons.
Mental Hygiene Law § 81.02 requires a finding based upon clear and convincing evidence that the AIP is likely to suffer harm because the person is unable to provide for personal needs and/or property management and cannot adequately understand and appreciate the nature and consequences of such inability.
Even assuming incapacity, there is no need for a guardian in this instance as Imre is the agent-in-fact under the power of attorney which all entities other than Merrill Lynch have accepted. The General Obligations Law provides a remedy for Imre to compel Merrill Lynch to accept the power of attorney (General Obligations Law §§ 5-1504 [2]; 5-1510 [2] [i]). Mental Hygiene Law article 81 requires treating a guardianship as a last resort. In light of the remedy available under the General Obligations Law, it would be an inappropriate use of judicial resources to appoint a guardian in this case.
Mental Hygiene Law § 81.06 (a) (6) authorizes a person concerned with the welfare of the AIP to commence a proceeding under article 81. Imre is the stepson of the AIR He is a domiciliary of Ottawa, Ontario, Canada. This court can only exercise jurisdiction over his person for enforcement purposes within the state. With the increasing use of computerized technology to undertake and conclude financial transactions, it is conceivable that Imre could do just that without ever setting foot in New York, thereby depriving the court from exercising its authority over him.
The United States and Canada are signatories of the Hague Convention protocols regarding out-of-country process and *466 enforcement of judgments, e.g. (1) the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (20 UST 361, TIAS No. 6638 [Nov. 15, 1965]); (2) Convention of 1 February 1971 on the Recognition and Enforcement of Foreign Judgments in Civil and Commercial Matters (available at http://www.hcch.net/index_en.php? act=conventions.text&cid=78); (3) Supplementary Protocol of 1 February 1971 to the Hague Convention on the Recognition and Enforcement of Foreign Judgments in Civil and Commercial Matters (available at http://www.hcch.net/index_en.php? act=conventions.text&cid=79); (4) Convention of 25 October 1980 on International Access to Justice (available at http:// www.hcch.net/index_en.php?act=conventions.text&cid=91); (5) Convention of 13 January 2000 on the International Protection of Adults (available at http://www.hcch.net/index_en.php? act=conventions.text&cid=71); and, (6) Convention of 5 July 2006 on the Law Applicable to Certain Rights in Respect of Securities held with an Intermediary (available at http:// www.hcch.net/index_en.php?act=conventions.text&cid=72). Mental Hygiene Law § 81.26 provides for designation of the clerk of the court and the clerk’s successor for services of process in cases where the guardian is out of state. Imre’s domicile in Canada creates practical problems and additional costs for enforcement.
Finally, the appointment of a co-guardian will not cure those problems and will add to the cost of the guardianship. The co-guardian could incur liability for any acts or omissions committed by the other guardian. The co-guardian would, in essence, become a de facto monitor or oversight manager with no authority to pursue legal remedies beyond New York’s border, except as provided in the various protocols established by the Hague Convention.